# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**PHYSICIANS PRIMARY CARE, PLLC**                                               **PLAINTIFF**

**v.**                                                                          **No. 3:22-cv-96-BJB**

**SIEMENS MEDICAL SOLUTIONS**                                                   **DEFENDANT**
**USA, INC.**

## MEMORANDUM OPINION AND ORDER

Physicians Primary Care sued Siemens Medical Solutions USA, Inc., also known as "Siemens Healthineers," in state court for breach of contract. Siemens Medical, the Complaint (DN 1-1) alleged, failed to properly service and maintain an MRI machine it leased to Physicians Primary. In response, Siemens Medical removed the case, answered the complaint, and moved for judgment on the pleadings ("MJOP") (DN 21). Physicians Primary, the motion argued, previously released any MRI-related claims it may have had against Siemens Medical. *Id.*

Both parties' papers discussed the release, but neither side had made that contract part of the pleadings. *See id.*; Release Agreement (DN 21-2); Response (DN 24). So the Court converted that motion into one for summary judgment, in order to allow proper consideration of the release that Siemens Medical attached to its motion (but not its answer or counterclaim). *See* Order Converting Motion to Summary Judgment (DN 27); FED. R. CIV. P. 12(d). This conversion afforded the parties notice and an opportunity to be heard: both sides filed supplemental briefs and participated in a telephonic argument on the motion. *See* Siemens Additional Reply Brief (DN 28); PPC Additional Response Brief (DN 29); DN 31. Based on those arguments and the record material before the Court, summary judgment in favor of Siemens Medical is warranted. The release makes crystal clear that Physicians Primary agreed not to file a suit such as this against Siemens Medical.

## I. The Allegations

Physicians Primary was a medical practice in Louisville; it's now inactive. Complaint at 7; PPC Answer to Counterclaim (DN 16) ¶ 27. Siemens Medical is a Delaware corporation, Complaint at 7, and (as subsequent uncontested filings show) a wholly owned subsidiary of Siemens Aktiengesellschaft, a German conglomerate, MJOP at 9. Physicians Primary leased a Magnetom Symphony MRI machine from Siemens Medical in 2014. *Id.* at 3. Siemens Financial Services, Inc. ("Siemens

Financial"), another Siemens subsidiary, financed the lease. Counterclaim (DN 14) ¶ 12. Physicians Primary and Siemens Medical also entered into a separate contract for Siemens Medical to provide service and maintenance on the MRI machine for seven years. Complaint at 8. Despite agreeing to these contracts in early 2014, Siemens Medical did not install the MRI machine in Physicians Primary's office until June 2015. *Id.* at 9.

Unfortunately, according to Physicians Primary, this particular MRI machine was a lemon. Almost from day one, the machine struggled to retain the coolants essential to preserving and protecting its magnet. *Id.* Over the next year, Siemens Medical's service and maintenance staff attempted several times to fix the coolant issue and other problems. *Id.* at 49–56. They never solved the core problem, however, and sometime between June and August 2016, the magnet "quenched" and the MRI machine became inoperable. *Id.* at 10. Siemens Medical advised Physicians Primary that the machine was now worthless, so Physicians Primary should seek out a third party to dispose of it. *Id.* Physicians Primary did so—dismantling the MRI machine and selling its parts for a small fraction of what Physicians Primary originally paid. *Id.*

## II. The Counterclaim and Motion for Judgment

Siemens Medical filed a counterclaim, motion for judgment on the pleadings, and supplemental motion for summary judgment that add to the story told by Physicians Primary. The federal government filed criminal charges against Physicians Primary and its then-President, Dr. Jeffery Campbell, in June 2017. MJOP at 4. These charges prompted Physicians Primary and the various Siemens entities to settle any disputes they had and close out their business with each other. At the time, Siemens Financial held liens on both the MRI Machine and Physicians Primary's CT scanner. Release Agreement Recital F. In consideration for allowing Physicians Primary to sell the CT scanner to a third party free and clear of the lien, Physicians Primary agreed in writing to release:

> Siemens Financial and each of Siemens Financial's predecessors, successors, assigns, subsidiaries, affiliates, insurers, attorneys, agents, representatives, and other persons and/or entities connected with any of the foregoing . . . [from] any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of action (whether at law and/or in equity), and obligations of every nature whatsoever (whether now known, unknown, asserted, unasserted, foreseen, unforeseen, contingent, actual, liquidated, or unliquidated) related to or arising out of this Agreement, the Contracts, the CT

>   Scanner, the MRI, and/or any documents executed and/or delivered in
>   connection with any of the foregoing.

*Id.* § 7.1.

As noted above, however, neither Physicians Primary nor Siemens Medical attached the release agreement to their pleadings, which would've allowed the Court to consider it in response to a Rule 12 motion. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under Rule 56."). But neither party disputed the Release Agreement's content or existence. This is significant given the potentially dispositive effect of that contract—and the apparent futility and inefficiency of further discovery and briefing if the contractual defense proved successful.

### III.  Standard of Review

When matters outside the pleadings are presented and considered by the Court in connection with a motion for judgment on the pleadings, the motion must—after giving the parties notice and a reasonable time to respond—be converted to a motion for summary judgment. FED. R. CIV. P. 12(d), 56(f). Before the Court may grant a motion for summary judgment, meanwhile, it must find that no genuine dispute of material fact requires resolution by a jury. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, that party must do more than merely show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence … of a genuine dispute[.]" FED. R. CIV. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### IV. Summary Judgment Is Warranted

"Parties are bound by the clear and unambiguous terms in their contracts." *Versailles Farm Home & Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022).[*] "[W]here words having a definite legal meaning are knowingly used in a writing the parties will be presumed to have intended such words to have their proper legal meaning in the absence of any contrary intention appearing in the instrument." *Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 77 (Ky. 1940).

Here, the Release Agreement clearly and unambiguously covers every conceivable claim pertaining to the MRI machine and every conceivable entity related to Siemens Financial, including Siemens Medical. The Release Agreement covers Siemens Financial, its "affiliates," and any entity that had anything to do with the MRI machine. Release Agreement § 7.1. Black's Law Dictionary (2016) defines an "affiliate" corporation as "[a] corporation that is related to another corporation by shareholdings or other means of control," such as a "sibling corporation." *See also Pope v. Carl*, 742 F. App'x 123, 127 (6th Cir. 2018) (applying Kentucky law and accepting Black's definition of "affiliate"). Siemens Medical and Siemens Financial are both wholly owned subsidiaries of Siemens Aktiengesellschaft, making them siblings and bringing Siemens Medical under the Release Agreement's terms. DN 21 at 9; 2017 Annual Report (DN 21-3) at 119. And even if they were not siblings, Siemens Medical was unquestionably one of the "persons and/or entities connected with" the MRI machine; its agreement with Physicians Primary to sell and maintain the machine is the reason this case exists. Release Agreement § 7.1. All entities covered by the Release Agreement are discharged from "*any and all* … claims, … [and] causes of action … of *every nature whatsoever*" related to the MRI machine. Release Agreement § 7.1 (emphases added). This broad language plainly covers Physicians Primary's contract claim and shows an intent by the parties to ensure that Siemens Medical could not be held liable for this sort of claim.

---

[*] Both the MRI lease and maintenance agreements are specifically governed by Pennsylvania law. *See* MJOP (DN 21) at 7. But the Release Agreement contains no choice-of-law provision. A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state it sits in. *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017). When the parties do not effectively choose the governing law, the law of the state that has "the most significant relationship to the transaction and the parties" applies. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013) (quoting Restatement (Second) of Conflicts § 188(1) (1971)). The Court applies Kentucky law here because Siemens Medical cited Kentucky law during the hearing, Physicians Primary never objected, both sides agree the choice of law doesn't affect the outcome, and the Release Agreement is most closely related to Kentucky because the CT scanner was in Kentucky at the time of contracting. *See* Restatement (Second) of Conflicts § 188(2)(d) (1971).

Physicians Primary's principal argument is that the Release Agreement does not mention Siemens Medical by name. Terms such as "affiliates" and "other persons and/or entities connected with" are not explicitly defined in the release. Response to MJOP (DN 24) at 5–6. But when a contract does not define terms, they should be afforded their plain meanings, and their ordinary meanings clearly include Siemens Medical. *See Cadleway Props., Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 286 (Ky. App. 2010) (citing *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006)) (stating that "a contract cannot be interpreted contrary to the plain meaning of its terms").

Physicians Primary also points to its leasing schedule with Siemens Financial, which specifies that Siemens Financial is not "an agent or representative of [Siemens Medical] and neither has authority to bind the other," showing that they are separate entities. PPC Additional Response Brief at 2; Leasing Schedule (DN 30). Yes, they are indeed separate entities, but they are still sibling corporations that are both covered by the Release Agreement's text. Moreover, the leasing agreement predates the Release Agreement by about two years, so it cannot override the Release Agreement's plain language. *Id.*

\* \* \*

Because the claim is barred by the release, and no genuine issue of material fact exists regarding the release's applicability, the Court needn't address Siemens Medical's alternative arguments for dismissal—namely the statute of limitations, laches, standing, and failure to state a claim.

Nor, given this disposition, does any reason remain to consider Siemens Medical's request for a declaration. This relief sought against Physicians Primary concerns the same purported contractual obligation discussed and rejected above. *See* MJOP (DN 21) at 12–13; DN 31. Adding a declaration to the dismissal granted here would not help settle this controversy or clarify the legal relations; simply dismissing the case is a better and simpler remedy (as defense counsel acknowledged during the hearing). So the Court exercises its discretion to deny the declaratory relief after considering the five *Grand Trunk* factors. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

## **O**RDER

The Court grants Siemens Medical's motion for judgment on the pleadings, DN 21, as converted into a motion for summary judgment, DN 27, and denies its request for declaratory relief, DN 14.

Benjamin Beaton, District Judge
United States District Court

March 13, 2023